ARNOLD ERENKRANTZ, *p. a. vs.* HOWARD S. PALMER *et al., Trs.*

LOUIS ERENKRANTZ *vs.* SAME.

JANUARY 14, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J.  These are two actions on the case for neg-

ligence against the trustees of the New York, New Haven & Hartford Railroad Company, hereinafter referred to as the defendant. The respective plaintiffs are father and son. Arnold Erenkrantz, the son, seeks to recover damages for personal injuries which he allegedly sustained as a result of being injured by defendant's train. Since the case of the father, Louis Erenkrantz, depends on defendant's liability for the son's injuries, we shall treat only the son's case, unless otherwise noted.

The cases were tried together before a jury in the superior court. The trial justice granted defendant's motion for a nonsuit in each case at the conclusion of the evidence for the plaintiff. They are before us on exceptions by the respective plaintiffs to such rulings, and also on certain other exceptions to rulings on evidence during the trial.

When the case was called for trial the defendant moved in writing for a continuance on the ground of the absence of a material witness, namely, the engineer of the locomotive involved in the accident. In compliance with a rule of the superior court, this motion set forth a statement of the testimony which the defendant expected and believed that the engineer would give if he were produced as a witness at the trial. When the plaintiff agreed that such statement might be used as competent evidence in the case, the parties, in accordance with the rule, proceeded to trial.

The accident happened in the city of Providence on September 12, 1938, at or near the "frog" of a crossover to the Narragansett Electric Lighting Company plant, which frog is located toward the westerly end of a stretch of track that runs between a large area of vacant land on the north and Roger Williams Park on the south. From this frog the track continues on in a generally westerly direction, curving to the left. Looking easterly from the indefinitely described place of the accident, the track is substantially straight for a considerable distance. There was no public crossing where the accident happened.

About 6 o'clock, p. m. of September 12, the plaintiff, then

nine years old, was asked by Roger Carnes, fourteen years of age, if he wanted to see the monkey house, a building in Roger Williams Park, where monkeys are housed and where there had recently been a fire. As plaintiff agreed with the suggestion, the two boys, who then lived near each other on a street relatively close to the park, went across the vacant land on the north of the track intending to cross it at or near the above-described frog in order to enter the park land on the south side of that track.

The plaintiff testified that as he was about to cross the track he tripped and fell, with his left foot "caught under the track" so that he "couldn't move it." At that time he saw no train. Lying on the ground he tried to extricate his foot but was unsuccessful. After being thus engaged for "about a few minutes", he saw a train coming towards him from the east, at which time both he and Carnes, who was trying to help him, "started waving and hollering." Carnes, who was right next to him, was "jumping up and down and waving his arms."

The plaintiff further testified that the train did not "slow up at all"; that before the train reached him he threw himself "down out of the way", apparently meaning that he threw his body away from and to the north of the track; and that after the train had passed him, without stopping, he was able to free his foot. He then crawled onto the vacant land to the north of the track, where he remained until his father, who had been notified of the accident by Carnes, came to his assistance.

Plaintiff's father testified that when Carnes told him of the accident, which was only a few minutes before he reached the place where his son was lying on the ground, it was "very light, just at sundown"; and that, looking east from where the Narragansett Electric Lighting Company's spur joined the main track, a place which is not otherwise specifically located, one could see down the track for about fifteen hundred feet. No testimony by Carnes was introduced.

The plaintiff also put in evidence, without objection, de-

fendant's statement of the engineer's testimony, which, as we have already noted, was incorporated in defendant's motion for a continuance. We quote in full the body of this statement. "That the defendants expect and believe that said Arthur S. Ross would testify:—that on September 12, 1938 he was in charge of engine No. 3409, known as the 'Auburn Switcher'; that on said date he was proceeding along the Harbor Junction Branch at about ten miles per hour; that he was seated in the engineer's seat, looking ahead over the rear end of the locomotive, which was traveling in reverse; that he was on the left hand side of the locomotive and on the Roger Williams Park side of the locomotive; that one of the freight crew occupied the fireman's seat on the opposite side; that he saw no one ahead of him as he passed the Park and that if anyone was on the track that day in front of him he surely would have seen them; that if anyone came up to his train that day they did so after his engine had passed; that if anyone approached the track from the Roger Williams side he would have seen them; that the track at this point curves to the left and he had a fairly good view of both sides as he approached the cross-over to the Narragansett Electric Plant."

The plaintiff did not deny that he was a trespasser at the time and place of the accident. It is the generally accepted rule that a railroad company owes no duty to a trespasser on its premises except to abstain from willful and wanton injury to him *after* he is discovered in a position of peril. *Boday* v. *N. Y., N. H. & H. R. R. Co.,* 53 R. I. 207.

The instant case is governed by our well-established rule that if there is any evidence to support the plaintiff's right of action the motion for a nonsuit must be denied. In passing on such a motion, a plaintiff is entitled to the benefit of all reasonable inferences favorable to him, irrespective of the weight of the evidence. *Walling* v. *Jenks,* 62 R. I. 424.

We have examined the evidence in the record before us and, after due consideration, we have come to the conclusion that defendant's motion for a nonsuit was properly granted.

This evidence, whether direct or by way of reasonable inference, is so indefinite on certain of the determinative questions in the case as to lead only to conjecture and speculation. A plaintiff's right of action cannot be supported on any such basis.

Throughout our consideration of the evidence we have been unable to fix with any definiteness the place of the accident or where and how the plaintiff's foot was caught. The plaintiff first testified that his foot was caught "under the track", without further identification; then, that his foot was caught "like in a frog where the tracks go across"; and then that his foot was "caught under the track, but not under the straight track." In what part of the frog the plaintiff caught his foot, if it was caught at that place, or where, with specific reference to the straight track, was the place where he caught his foot, or how he caught his foot under the track, are all matters as to which there is either no evidence or the evidence is too vague. No plat or photograph was introduced in evidence to assist in understanding these features of the case.

These substantial infirmities in the evidence are fatal to the plaintiff's case on defendant's motion for a nonsuit. As the evidence appears in the record now before us, we find no ground for a reasonable inference by a jury that the engineer *saw* the plaintiff's peril and thereafter did nothing to avoid injuring him.

The plaintiff's exception is overruled in each case, and each case is remitted to the superior court for entry of judgment on the nonsuit.

*Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan,* for plaintiffs.

*Swan, Keeney & Smith, Marshall Swan, Eugene J. Phillips,* for defendants.